|  |  |  |
|---|---|---|
| | ) | |
| Gary D. Evans, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-10606-DJC |
| | ) | |
| John Coleman, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                               May 17, 2011

## I.      Introduction

Petitioner Gary D. Evans ("Evans") filed a writ of habeas corpus ("Petition") pursuant to 28

U.S.C. § 2254 alleging that violation of his Sixth Amendment right to represent himself, an allegedly

faulty jury instruction at trial and the Massachusetts Appeals Court's extension of a deadline for the

filing of the Commonwealth's brief on appeal entitle him to relief.  For the reasons set forth below,

the petition is DENIED.

## II.      Background

### A.      Initial Attorney Representation During the Pretrial Stage

Evans was indicted on January 15, 1997 for aggravated rape, burglary with assault on an

occupant and assault with a dangerous weapon on a person sixty years of age or older.  (S.A. 11,

98).[1]  The charges arose out of an incident in the early morning hours of December 11, 1996 when

---

[1]For the purposes of this Memorandum and Order, all references to the record are
abbreviated as follows:   Respondent's Supplemental Answer ("S.A."); Evans'

an assailant, later identified as Evans, broke into the Haverhill residence of a seventy-nine year old woman and raped her. (Opp. 5-7). Evans had visited the victim the night before to return a wallet that had been stolen from her residence two days earlier. (Opp. 7-11). Attorney Andrew Benson ("the first attorney") was appointed to represent Evans at his arraignment on February 3, 1997. (S.A. 1). The first attorney filed a number of motions on Evans' behalf, including motions to suppress the victim's identification of Evans and to suppress statements Evans made to the police. (S.A. 1-3). By letter dated October 28, 1997, Evans informed his first attorney that he was dissatisfied with his representation, expressed frustration at his alleged failure to provide him with "certain information" and asked him to "immediately file a motion to dismiss [himself] from this case." (S.A. 165). In his letter, Evans makes no mention of a desire to proceed *pro se*. (S.A. 165). In accordance with his client's wishes, on November 10, 1997, the first attorney moved to withdraw as Evans' counsel, citing a breakdown in "calm communication" and the development of "serious differences [between Evans and his attorney] in the handling and strategy of the case," and requested that the Court appoint a new attorney to represent Evans. (S.A. 163-65).

During a November 13, 1997 hearing on the motion, the first attorney argued that Evans should be appointed new counsel. At the beginning of the hearing, when the Superior Court (Bohn, J.) asked whether Evans would like to be heard on the motion to withdraw, Evans declined and the first attorney directed the judge to Evan's October 28, 1997 letter attached to the motion. (M. Tr. 11.13.97: 3-4). The first attorney reiterated his concerns set forth in his written motion and

_____

brief in support his habeas petition ("Pet. Br."); Respondent's opposition ("Opp."); motion hearing transcripts from November 13 and 21, 1997 included in Volume II of the Respondent's Supplemental Answer ("M. Tr. [date]"); and trial transcripts included in Volume II of the Respondent's Supplemental Answer ("Tr. #").

explained that, given the posture of the case and his maintenance of the case file, new counsel would be able to take over without adverse effect on Evans or his case. (M. Tr. 11.13.97: 6-7).

After this exchange, the judge asked Evans if he was going to hire his own lawyer and when Evans responded that he would not be doing so, the judge asked if he would be representing himself. (M. Tr. 11.13.97: 7). Evans responded, "I'll go *pro se*, I don't care." (M. Tr. 11.13.97: 7). Evans then requested if he could "get a standby counsel" and agreed to have the first attorney serve as standby counsel. (M. Tr. 11.13.97: 8). Evans explained that he was not dissatisfied with his representation, only "the strategy involved." (M. Tr. 11.13.97: 8-9). When asked by the court if he could serve as standby counsel, the first attorney answered affirmatively but reiterated that Evans should be appointed counsel to represent him. (M. Tr. 11.13.97: 9). Evans voiced no objection to his attorney's comment and the judge concluded the hearing and took the motion to withdraw under advisement. (M. Tr. 11.13.97: 9).

The same day, after the hearing but before he was informed of the court's ruling on the motion to withdraw, Evans wrote to the judge explaining his strategic differences with the first attorney and reiterating his request that the first attorney be dismissed. (S.A. 87). Evans also stated:

> ". . . . I am able to proceed without counsel. I'm familiar with
> the laws of Massachusetts and while in the state prison for 11
> years I studied them without confusion and was the law clerk
> for years . . . I ask to proceed *pro se* to bring to the attention of
> this court the truth and only the truth without a false strategy.
> I ask at this time you please take this letter into consideration
> and allow me to proceed *pro se*...."

(S.A. 87). At a subsequent status conference on November 21, 1997 for "status as to counsel" (M. Tr. 11.13.97: 10), at which Evans was not present, the court indicated that it had granted the motion to withdraw in chambers after the November 13th hearing. (M. Tr. 11/21/97: 3-

4).   The judge noted that he had received Evans' letter "explaining why he wanted new counsel in this case and it made sense." (M. Tr. 11.21.97: 4).   The judge then appointed Attorney Lawrence Pidgeon ("the second attorney"), who was present in the courtroom at the time, to represent Evans (M. Tr. 11.21.97: 4-5).   The judge advised the second attorney that there was a "letter in the file from Mr. Evans that you may want to look at before [meeting with the defendant]," and commented, "Mr. Evans may not know that I've allowed his motion.  Basically what Mr. Evans said is that he'd just as soon represent himself, but I thought that was not helpful." (M. Tr. 11/21/97: 5-7).

### B.  New Representation for the Further Pretrial Stage and At Trial

The record shows that at no time after the November 21, 1997 ruling until his trial concluded on March 6, 1998 did Evans object to the second attorney's representation, seek to have the second attorney withdraw, or renew a desire to proceed *pro se*.  Evans' trial lasted from March 3 to 6, 1998. (S.A. 4).  The second attorney represented Evans at trial, at a suppression hearing the day before trial began, and at sentencing.  According to the trial transcript and docket, Evans never objected to the second attorney's representation during the course of the trial.  The jury returned a verdict of guilty on all counts on March 6, 1998. (Tr. 6: 92).  On March 9, 1998, the Superior Court (McEvoy, J.) sentenced Evans to serve forty to sixty years on the aggravated rape, forty to sixty years on the burglary and assault count, and four-and-one-half to five years on the conviction for assault by means of a dangerous weapon on a person sixty years or older - all to be served concurrently. (Tr. 7: 8-10).   ### C.  State Appellate Proceedings

Evans' appeal was docketed with the Massachusetts Appeals Court on January 8, 2003, but it appears that the Appeals Court vacated the entry of the appeal as prematurely assembled in June 2003.  (S.A. 9-10).  The case was entered on the Appeals Court docket on October 26, 2007.  (S.A.

12).

On appeal, Evans raised six claims including the three grounds for relief in his present habeas petition: (1) error in refusing to allow him to proceed *pro se*; (2) error in allowing the correction of the record; (3) an erroneous jury instruction concerning what constitutes a dangerous weapon; (4) an erroneous jury instruction concerning the intent required for a burglary-assault conviction; (5) that the aggravated rape conviction should be reduced to rape; and (6) that one of the charges should be dismissed as duplicative. (S.A. 19-92, 227). On February 11, 2009, the Appeals Court vacated as duplicative the assault by means of a deadly weapon indictment and affirmed Evans' convictions for aggravated rape and burglary with assault on an occupant "for substantially the reasons set forth in the brief of the Commonwealth." Commonwealth v. Evans, No. 07-P-1680, 73 Mass. App. Ct. 1120 (2009) (S.A. 227). Evans filed an Application for Leave to Obtain Further Appellate Review with the Supreme Judicial Court on February 27, 2009, but the Supreme Judicial Court denied the application on April 1, 2009. Commonwealth v. Evans, 453 Mass. 1106 (2009) (S.A. 228, 298). Allowing ninety days in which Evans could have filed a petition for a writ of certiorari in the Supreme Court, his conviction became final on June 30, 2009. See 28 U.S.C. § 2244(d)(1)(A). Accordingly, Evans had until June 30, 2010 to bring a habeas corpus petition. See 28 U.S.C. § 2244; Currie v. Matesanz, 281 F.3d 261, 262 (1st Cir. 2002).[2]

---

[2]The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214 (1996), imposes a one-year statute of limitations on the filing of petitions under 28 U.S.C. § 2254. The one-year statute of limitations for the filing of a habeas petition under 28 U.S.C. § 2254 begins to run from the date on which the petitioner's state court conviction becomes final. 28 U.S.C. § 2244(d)(1). A state court conviction becomes final for purposes of § 2244(d) when the Supreme Court denies certiorari of the state court's final affirmation of a petitioner's conviction or, if the petitioner does not seek certiorari, upon the expiration of the ninety-day period during which a petition for certiorari might have been timely filed. See Clay v. United States, 537 U.S. 522, 525-26 (2003); Neverson v. Farquharson, 366 F.3d 32, 36 (1st Cir. 2004).

**D. Habeas Proceedings**

Evans timely filed the instant habeas petition on April 12, 2010. The petition asserts three

grounds for relief:

1)  The state court violated Evans' Sixth Amendment right to represent himself;

2)  The trial judge's jury instruction inviting the jury to infer that a defendant breaking and entering in the nighttime intends to commit the crime of larceny in a building where the evidence did not support a finding that Evans intended to steal anything when he broke into and entered the victim's home created a substantial risk of a miscarriage of justice; and

3)  The Massachusetts Appeals Court decision to allow the Commonwealth to file its brief opposition to Evans' appeal beyond the date initially ordered by the court violated due process.

## III.  Standard of Review

A petitioner's application for a writ of habeas corpus cannot be granted unless petitioner's

state court adjudication was contrary to or involved an unreasonable application of clearly

established federal law, as determined by the Supreme Court, or was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C.

§ 2254(d); Clarke v. Spencer, 582 F.3d 135, 144 (1st Cir. 2009). Moreover, the factual findings

underpinning a state court decision are "presumed to be correct" unless the petitioner rebuts this

presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Epsom v. Hall, 330

F.3d 49, 52 (1st Cir. 2003).

## IV.  Discussion

### A.  Evans Was Not Denied His Sixth Amendment Right to Represent Himself

Evans' first ground for habeas relief asserts that the state court violated his Sixth Amendment

right to represent himself. Evans clearly raised this issue, arising under the Sixth Amendment and

the Supreme Court's decision in Faretta v. California, 422 U.S. 806 (1975), in his brief to the Appeals Court. (See S.A. 44-52). The Appeals Court rejected this claim and reached its decision "for substantially the reasons set forth in the brief of the Commonwealth," Evans, 73 Mass. App. Ct. 1120 (S.A. 227), accepting the Commonwealth's argument that Evans either failed to unequivocally invoke his right to proceed *pro se* or that he waived that right by accepting the second attorney's representation without objection. (See S.A. 119-129). Because Evans' Sixth Amendment claim was considered and decided by the state court, Evans cannot be granted relief unless the Appeals Court decision was either contrary to or unreasonably applied clearly established federal law. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A defendant in a state criminal trial has a right under the Sixth Amendment to proceed *pro se* if he "clearly and unequivocally" asks to do so. Faretta, 422 U.S. at 835 (1975); United States v. Woodard, 291 F.3d 95, 109 (1st Cir. 2002). The defendant must "knowingly and intelligently" relinquish the traditional benefits associated with representation by an attorney. Faretta, 422 U.S. at 835 (citation omitted). Courts are obligated to "indulge in every reasonable presumption against waiver of the right to counsel." United States v. Proctor, 166 F.3d 396, 401 (1st Cir. 1999) (citation omitted). Further, when conflicts arise between the Sixth Amendment rights to counsel and to self-representation, e.g., when a judge forces a defendant to choose between retaining an unwanted attorney or representing himself at trial, it is the right to counsel that is "paramount." Woodard, 291 F.3d at 106 (citing Proctor, 166 F.3d at 401). "In sum, the essence of the case law is that representation by counsel is a right of the highest order. It may be denied a criminal defendant only when circumstances unequivocally demonstrate a waiver, either when a defendant knowingly, voluntarily, and clearly asserts the mutually exclusive right to self-representation, or through delay

or other conduct inconsistent with its continuation." Proctor, 166 F.3d at 402. Moreover, "[w]here the alleged assertion of Faretta rights is clearly conditioned on the denial of a preferred form of requested relief involving counseled representation, and where . . . a variant of the preferred form of relief is *granted* without subsequent objection or renewal of the request for self representation, it would undermine the Sixth Amendment to treat a conditional assertions of Faretta rights as efficacious." Jordan v. Ficco, 134 Fed'x 452, 454 (1st Cir. 2005) (emphasis in original).

From the Court's examination of the record in this case, it does not appear that Evans unequivocally asserted his desire to proceed *pro se*. Evans' October 28, 1997 letter that demanded that his first attorney move to withdraw, made no mention of proceeding *pro se*. It merely reiterated that Evans no longer wanted the first attorney representing him. In his motion to withdraw and at the November 13, 1997 hearing (at which Evans was present), the first attorney requested more than several times that successor counsel be appointed to represent Evans to which Evans raised no objection. Further, it was the motion hearing judge who raised the possibility to Evans about whether he would be representing himself after the judge indicated that he was not inclined to grant the motion and suggested that he would not appoint successor counsel. Only at that point did Evans indicate his willingness to proceed *pro se*. (M. Tr. 11/13/97: 7-8). Evans' letter to the judge following the motion hearing focused precisely on the reasons "why he wanted new counsel" (M. Tr. 11/21/97: 4), concluding with a request to proceed *pro se*. (S.A. 87). Thus, it appears that Evans' request to proceed *pro se* was merely an alternative request, which the motion judge stood in the best position to reasonably assess at the time, in the event that the court was inclined to deny the motion to withdraw and not appoint new counsel. The judge granted the motion to withdraw and

8

also appointed new counsel[3] which on this record, appears to be the primary relief Evans requested. See, e.g., Jordan, 134 Fed'x at 454. Accordingly, it cannot be said that Evans took a clear and unequivocal position that he desired to proceed *pro se*.

### 1.      Subsequently Accepting Representation Waived Evans' Right to Proceed *Pro Se*

Even assuming that Evans had unequivocally asserted his right to represent himself, his subsequent silent acquiescence during the second attorney's representation of him constituted a waiver of that right. "'[A] waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself.'" Commonwealth v. Jordan, 49 Mass. App. Ct. 802, 814 (2000) (quoting Wilson v. Walker, 204 F.3d 33, 37 (2d Cir. 2000)) (further citations omitted); see Wilson, 204 F.3d at 37 (noting that "[o]nce asserted . . . the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether") (further citations and quotations omitted); see also McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) (ruling that "[o]nce a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced").

Here, at no point from the time of the second attorney's appointment as Evans' successor

---

[3]The fact that Evans was not present in court on November 21, 1997 when the judge announced that he had granted the motion to withdraw and appointed the second attorney as Evans' counsel does not change the Court's analysis. (Pet. Br. at 4-5). A full hearing on this motion had been held on November 13, 1997 for which Evans had been present. The court made clear at the November 21st status conference that it had already granted the motion. What is clear from the record is that Evans had an opportunity to be heard at the hearing on November 13th and that he did not object to the second attorney's representation at any point during that attorney's subsequent representation of him.

counsel or in the three-and-one-half months leading up to trial, or during the course of the four-day

trial itself, did Evans object to the second attorney's representation or reassert any desire to proceed

*pro se*.  By failing to do so, Evans waived his right to represent himself.  See Jordan, 49 Mass. App.

Ct. at 814 (finding that the trial judge could have reasonably concluded that the defendant was

satisfied and had abandoned his prior requests to proceed *pro se* when he made no oral or written

complaint after co-counsel was appointed and never reasserted his right to proceed *pro se*); U.S. v.

Montgomery, 529 F.2d 1404, 1406 (10th Cir. 1976) (finding defendant no longer asserted his right

to proceed *pro se* when he allowed counsel to conduct plea bargaining on his behalf); Smith v. State,

588 A.2d 305, 306 (D. Me. 1991) (finding the defendant "waived his previously asserted request to

represent himself" when he agreed to and acquiesced in all actions taken by counsel and never

reasserted his request to proceed *pro se*).  Contrast Johnstone v. Kelly, 808 F.2d 214, 216 (finding

the defendant's "persistent requests to represent himself" satisfied Faretta's requirement of a

knowing, voluntary, and unequivocal waiver of the right to appointed counsel).

Evans' argument that any further requests to proceed *pro se* would have been futile is belied

by the record.  Evans had already succeeded through his own persistence in replacing the first

attorney.  Evans could have reasserted at any point after the latter's appointment that he desired to

proceed *pro se*.  See Wilson, 204 F.3d at 38-39 (holding that if the situation is open to interpretation,

the defendant should seek clarification to avoid the appearance that he has abandoned his request

to represent himself).

Moreover, Evans' reliance on United States v. Arlt, 41 F.3d 516, 524 (9th Cir. 1994) to

support his argument that he had made clear his request to represent himself is misplaced.  In Arlt,

the defendant requested to proceed *pro se* at the pre-trial conference, renewed his request after

10

consulting with a court appointed attorney, and renewed his request again after that attorney was

appointed as counsel at which point he "demand[ed] to represent himself." 41 F.3d at 517. The

Ninth Circuit found that the defendant's request to proceed *pro se* was made unequivocally and with

"clarity and forcefulness" since the defendant "persisted in seeking the right to represent himself"

even when the judge denied the motion and appointed counsel for him and "repeated his request by

noting the he was *demanding* that right." Arlt, 41 F.3d at 519 (emphasis in original). In stark

contrast to the defendant's request in Arlt, it cannot be said that Evans unequivocally asserted his

request to proceed *pro se*, where it was first proposed by the judge at the November 13, 1997

hearing and where it appeared that Evans' request to represent himself was only an alternative to

having new counsel appointed. Even assuming the request was unequivocal, the record shows that

Evans abandoned that request when he accepted the court's appointment of new counsel and made

no objections from that point through trial.

In light of the foregoing, the state court adjudication was not contrary to, or involved an

unreasonable application of Faretta nor was it based upon an unreasonable determination of the facts

in light of the evidence presented in the state court proceeding. Accordingly, Evans' habeas petition

as to his first ground for relief is denied.

**B.      Evans' Objection to the Trial Judge's Jury Instructions Is Procedurally
          Defaulted**

It is well-established that federal habeas review of a claim is precluded where the defendant

has "defaulted on that claim in state court by virtue of an independent and adequate state procedural

rule." Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010) (citing Coleman v. Thompson, 501

U.S. 722, 729 (1991)). "One such ground is a state court's finding that a claim is forfeited due to

a failure to object at trial 'so long as the state court consistently applies its contemporaneous

objection rule and has not waived it in the particular case by basing the decision on some other ground.'" Glacken v. Dickhaut, 585 F.3d 547, 551 (1st Cir. 2009) (quoting Lynch v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006)). The First Circuit has repeatedly held "that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground firmly established in the state's jurisprudence and regularly followed in its courts." Janosky, 594 F.3d at 44 (citing cases); see Lynch, 438 F.3d at 44-45 (finding procedural default with a due process claim challenging a jury instruction); Horton v. Allen, 370 F.3d 75, 80-81 (1st Cir. 2004) (finding procedural default where defendant failed to object to voir dire procedure at trial stage); Glacken, 585 F.3d at 550-51(finding procedural default where defendant failed to object to jury instruction at trial).

Such is the case here where Evans failed to object to the allegedly faulty jury instruction at trial regarding whether the jury may infer an intent to steal when a person breaks and enters in the nighttime. (Pet. Br. 11-13; S.A. 137). Although the state court reviewed Evans' claim for a "substantial risk of a miscarriage of justice" (S.A. 137), such review does not constitute a waiver of the contemporaneous objection requirement. Horton, 370 F.3d at 81 (citing cases); see Janosky, 594 F.3d at 44 (citing cases).

Thus, federal habeas review of Evans' jury instruction claim in his second ground for habeas relief is precluded unless he can demonstrate cause for his failure to object to the jury instruction and prejudice resulting from the default. Lynch, 438 F.3d at 45; Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). Here, Evans has shown neither. "To establish cause, there must be some objective factor external to the defense which impeded counsel's efforts to comply with the state procedural rule." Lynch, 438 F.3d at 46 (internal quotation marks and citations omitted). "One way to establish

12

cause is to demonstrate that defense counsel's inaction constituted ineffective assistance of counsel."

Horton, 370 F.3d at 81 (citing Coleman, 501 U.S. at 752). Here, however, Evans never brought an ineffective assistance of counsel claim nor has he even attempted to explain the cause for his procedural default. Since Evans offers no explanation as to the cause for his procedural default and does not address any prejudice from the default, the Court need go no further. Accordingly, Evans' second claim is procedurally defaulted and is hereby denied.[4]

### C.    Evans' Third Ground For Relief Is Not Constitutionally Cognizable

In his third ground for relief, Evans alleges that the Appeals Court allowed the Commonwealth to file their opposition brief beyond the dates ordered by the Court. (Pet. Br. at 16-17). Upon this Court's review of the docket, it appears that the Appeals Court granted the Commonwealth several extensions before staying the appellate proceedings until August 14, 2008. (S.A. 12-13). The Commonwealth subsequently filed their brief on September 11, 2008. (S.A. 13). Thus, contrary to Evans' allegations, it does not appear that the Commonwealth violated any court order by filing its brief on September 11, 2008.

At most, Evans' challenge to the filing of the Commonwealth's opposition brief concerns state appellate procedure. However, the First Circuit has noted that habeas relief does not lie where only "questions of compliance with state law" are raised. Kater v. Maloney, 459 F.3d 56, 61 (1st

---

[4]Although a federal habeas court may nonetheless excuse a procedural default if the petitioner can demonstrate that the failure to consider his claim would be a "fundamental miscarriage of justice," Janosky, 594 F.3d at 46, such is not the case here. The fundamental miscarriage of justice exception to the procedural default rule is "narrow and applies only in extraordinary circumstances - circumstances in which a petitioner makes a showing of actual innocence." Id. (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)); see Walker v. Russo, 506 F.3d 19, 21 (1st Cir. 2007). Here, Evans has not attempted to make any such showing, and none is evident on the face of the record.

Cir. 2006). "[E]rrors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised." Id. (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Although he claims that allowing the Commonwealth to file its brief after the original court deadline "violated [his] rights to due process" (Pet. Br. 17),[5] Evans has not shown that the Appeals Court's decision to grant extensions to the Commonwealth to file its appellate brief and to allow it to file its brief less than thirty days after the Court vacated the stay on appellate proceedings rises to the level of a constitutional violation.

## V.    Conclusion

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[5]The one case upon which Evans relies in his reply brief, MacNeil Bros. Co. v. Forte, 253 F.2d 500, 501 (1st Cir. 1958) (dismissing appeal for "want of diligent prosecution") is of no aid to the issue of whether the alleged error here rises to a constitutional violation.